Your Honor, we are now recording. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Susan F. Hutchinson presiding. Your Honor, the second case on the docket this morning is 2-22-0048 Bank of New York Mellon, formerly known as the Bank of New York, as trustee for the certificate holders of the C. W. A. B. S. Incorporated Asset Backed Certificate Series 2007-6, Lukasz Krasinski, Plaintiff Appellee, the Mark A. Koch and Kathleen G. Koch et al. defendants appellants. Arguing for the appellants, Mr. Stephen Brown. Arguing for the appellees, Mr. Robert J. Dysinger. All right. Good morning, gentlemen. Initially, we want to thank you for the continuance that we requested the last time. I'm glad we could make arrangements so we can all be present today. And with that, if you are ready to proceed, Mr. Brown, you may do so. All right. Good morning, Justices of the First and Second District. My name is Stephen Brown, and I represent the appellants, Mark and Kathleen Koch. Our case essentially is that all of the evidence presented at trial ultimately amounted to the conclusion that the Bank of New York, the plaintiff slash counter defendant in this case, did not produce my clients with two notices of right to cancel as they were required to do so under TILA, the Truth in Lending Act. Counsel, if I can interject a very fundamental special question. Absolutely. Failure to perfect the state of the underlying foreclosure judgment in the time for filing a notice of appeal. Doesn't that render this instant appeal moot? It went to Illinois Supreme Court Rule 60, excuse me, 305K. This property was sold to a third party. Doesn't that deprive this court of the ability to grant you the relief you have requested? Your Honor, in this case, TILA also offers relief. It offers the fact that a violation occurred can result in certain repercussions. Whether or not rescission is we're able to effectuate rescission, we are able to put the coaches into a position that they were in before this all arose, that before they entered into their contract. So we can approximate rescission in this case through damages, which essentially amounts to the elimination of the deficiency judgment in this case, something that the court still has jurisdiction over and would be able to modify. But how do we- It's my understanding that you have not argued anything related to the June 23rd, 2017 dismissal of your claim for monetary damages and your motion to reconsider, your briefs, your motion to say the foreclosure was a supplemental memorandum ordered by this court. Is that correct? Justice, the order that you're referring to was for the dismissal of count two of the plaintiff's, the counter plaintiff's counterclaim. It did not touch on the rescission and any relief available under the rescission statute within TILA. So I believe we still have remedies available to us. But all right, Mr. Brown, you had, there were two counts in this complaint, one for rescission and one for money damages. The money damages claim was dismissed on 6-23-17. And we have that order, but we do not have any transcript of that proceeding. So we don't know exactly what was said. And so your kind of representation here today is difficult because we don't see that in any document that we can put our hands on and look at. But I think the other problem then, and that order was not on the notice of appeal. It wasn't one of the orders that was being considered and it's not being talked about anywhere that I can see within the brief, at least your brief or responded to by Mr. Dysinger. So then we get to the second issue of rescission. And after this appeal is filed, the motion for stay, several of them actually, say if this stay isn't granted, we have no relief. So how are you saying you still have relief in money damages when you say in written motions that you have no relief? Your Honor, or excuse me, Justice Hutchinson, we, at the time of the stay, we were concerned about the alienation of the property from the parties, in which case we do still argue that there is case law supporting an absolute right to rescission, regardless of, excuse me, the statute is not coming to me, the Supreme Court rule concerning the mootness of a claim if the stay hasn't been perfected for appeal in a foreclosure. So we would contend that there still is a remedy in rescission available to us. And I'm sorry, I don't have the case law available right now. Okay, but rescission, at least in my head and my understanding of rescission, as simply put, it's the unwinding of everything that's happened thus far, and we start over. We can't start over with that house. The remedy for rescission would be they're back in their house. We can't do that here. And so how can we decide that money is at issue when we don't even know? The only amount really we have is the bond set of 242 that your clients couldn't meet, $242,000. I mean, that's the only real money value we have in this record, correct? That's correct. Though, if we are to proceed, if the rescission claim is allowed, that will be subject to further proceedings of the trial court determining the amount of tender required in order to effectuate rescission. Circumstances change, I'm not sure that my clients can, but until we have those numbers, we don't know that they can't. Until we have a firm number from the trial court as to what that amount is and give my clients an opportunity to, I don't know, seek further funding from another lender, that we don't know that they can't attain that condition for rescission. So you're saying that there is some law that you are aware of, but you don't have it handy right now, that rescission is not only the unwinding of the proceedings and the return of the home, but there's also some provision to allow for a money judgment to be entered. Your Honor, as part of the rescission process, it requires the lender return all fees associated with, and this is in the statutory language of TILA, return all of the interest, return all of the financing charges that they applied to the coaches. So while it is rescission in the sense that it's unwinding everything to return things to the place they were, that does involve money damages, that does involve the return of funds, the tender of funds, both to and from the lender. So it's not so far out of the scope of rescission, and it's certainly in line with the spirit of the remedy to do what we can to leave the parties in the position they were in before they contracted. Would that then also include the 12 payments that they made between February of 2007 and February of 2008 when they stopped paying? Is that what you're saying? It would include the interest on those and any fees associated, yes. And again, your authority for that? Is TILA itself, I'm sorry, I don't have the... Well, I thought TILA had a set figure. There was like, you could, I can't remember the figure myself, but $4,000, $8,000 and something along that line. There is a TILA violation. The problem is, if there was a TILA violation, it wasn't against Bank of New York. It may have been against Countryside, but bottom line in this case, the trial court did not believe your clients and made that quite clear. So even if everything you say works and we can find the law that you can't find now, or you don't remember now, how do we say that the trial court abused its discretion and not believing your client? You do that by looking at the evidence. In this case, one of the most important single pieces of evidence is the fact that Bank of New York was only able to produce one notice of right to cancel. According to the Supreme Court in Petrovic in the second district in Snyder versus Ambrose, where one party has access to the evidence necessary to prove a positive, to combat a negative averment by the, in this case, the coaches, that if they fail to produce that document or that evidence, then that's evidence that they failed to meet their obligation and that's in this situation. That sounds to me like a classic ask of us to reweigh the evidence. The question is, why is it an abuse of discretion? It's an abuse of discretion because this evidence was ignored entirely. It wasn't addressed at all by the trial court, even though there's a binding legal precedent that states that this is of importance, that this needs to be weighed. As documentary evidence, it's not something that's subject to the discretion of- Did the court not consider it? It was not mentioned at all in the trial court's findings, but we know the trial court did look at this, approximately this evidence because it cited to this evidence as, or the signed, one signed notice of right to So we know the trial court looked at it and we know they ignored the fact that there was a second copy that should have been in the records that was missing. And furthermore, we know that the trial court acknowledged that the presumption that was created by that signed notice of right to cancel had been rebutted by coach's testimony. The trial trial court was clear that the presumption was very faint and that it had been rebutted. However, TILA section 1635 C of TILA states that any that that document only served to create a rebuttable presumption and do no more. So in this case, the trial court abuses discretion by one, using evidence that was statutorily, it was statutorily prohibited from doing once it had made a certain finding and two, ignoring the fact that there should have been more evidence in that specific, relating to that document that wasn't present, which both of which, well, both of which are of critical importance. And furthermore, the fact that there was only one notice of right to cancel in Bank of New York's records, it complied or it connected with the testimony of Cherry Maxwell, their closer, their witness, who ultimately stated that, well, she might bring two notices of right to cancel to a closing that one of them was for them to sign. And the other one was for them to keep indicating that she would typically, that her practice was to leave one notice of right to cancel, which is a violation of TILA. So the trial court also ignored the fact that she repeatedly referred to leaving one or a notice of right to cancel and instead construed her testimony as leaving two notices of right to cancel, which she never once testified to. She... trial court. In many cases defined, it is no reasonable person would have agreed with the decision of the trial court. And that's your position, correct? That is my position. Yes. Okay. And that's because there was... looking at that standard, the more broadly, the trial court, there was no evidence that the Bank of New York gave two notices of right to cancel. Their own witnesses, their own documents did not support that there were two. Maybe supported there was one. However... Mr. Brown, the Bank of New York didn't do any of that. That was countryside. I mean, Bank of New York is an S&E. So, I mean, you keep talking about Bank of New York, Bank of New York. They may have the file or they may have a file that was tendered by countryside, but countryside, that count was dismissed because countryside is not any... is no longer an active party in this case, right? That's true. I'm using Bank of New York as a shorthand for all of the lender, assignee, all the whole complex of them. In this case, yes, Countrywide was the immediately responsible. However, any assignee is still liable for rescission under 1641 of TILA. So, there's... whatever was Countrywide's responsibility is Bank of New York's. And to... to assume that Countrywide had two copies of the Notice of Right to Cancel, which it was legally required to give and to retain, and it didn't give both of those to the assignee, that requires a stretch of the imagination, which TILA, frankly, weighs against. TILA is a consumer protection statute, and as such, it needs to be interpreted in favor of the consumer. That coming up with taking a relatively simple story that Coach told that he related about how he had a closing that he received. It seems my time is up. I may proceed with your answer. Okay, thank you. The fact that Coach, he had a closing, he was at his home, he received documents, or he brought documents there, and he also left with a stack. We don't know if those were the same or not. And then he put that in a file cabinet and ultimately brought it to his attorney, having not disturbed it since the closing, and found that there weren't sufficient notices of right to cancel, shouldn't be so heavily, whether it's discounted or not, that doesn't excuse drawing additional unlikely inferences on behalf of the bank, in this case, Countrywide and Bank of New York. So that's a rest. Well, I have a question. Then what's the point of the two notices if one is not for the lender and one is to be left with the coaches? Isn't that two notices of rescission? Justice Hutchinson, the case law is very clear that the borrower needs to be left with two copies. And the reason, according to the case law, isn't particularly important, that TILA is a strict liability statute, and as such, any violation, whether or not we can show it was damaging, is still a violation and still gives rise to the right of rescission, or the extended statute of limitations or statute of repose for the right of rescission. So it's not necessary that the coaches were damaged by receiving one or zero notices of right to rescission. Clearly, they went to an attorney who was knowledgeable about these things and rescinded without using that specific notice. But we do know that there is a requirement, and that's a binding legal requirement, that they be given to at closing. Any further questions? I do not. No, I have no additional questions. And Mr. or Justice Hudson, do you have any other questions? I do not. Thank you. Thank you. I don't either. And so, Mr. Brown, you will have an opportunity to respond if you choose after Mr. Dysinger proceeds. Mr. Dysinger, you may proceed. Good morning, Justices. As you know, Robert Dysinger here arguing on behalf of the appellee. As your honors alluded, the plaintiff's position is that the appeal pending before you is moot. Under Illinois Supreme Court, well, let me not get ahead of myself. So there's multiple claims pending, or there were multiple claims pending before the trial court. One was for plaintiff's for foreclosure, and two were for defendant's claims under the Truth in Lending Act. Addressing the foreclosure claim first, it's undisputed that the property was sold to a third party, Mr. Lucas Krasinski, who was not a party to the foreclosure action, and that no stay was perfected by the defendants within the time required by Illinois Supreme Court Rule 305. And I believe the Steinbrecher case is fairly clear that in such circumstances, the foreclosure appeal is moot because the reversal of the foreclosure judgment could not affect Mr. Krasinski's acquisition of the property. All right, Mr. Dysinger, is there something in rescission that I'm missing? I thought rescission was just unraveling everything. They get, you know, and we get back to the house and the coaches in the house. Is there some secondary situation where they can actually receive money as a result of a rescission and not the house? Not that I'm aware of, Justice Hutchinson. I was trying to rack my brain while you were speaking, or while Mr. Brown was making his presentation, and I reviewed the statute, and the statute, I have it on my other screen, I can read it to you. It says, the creditor shall return to the obligor any money or property given as earnest money, down payment or otherwise, and shall take any action necessary to or appropriate to reflect the termination of any security interest created under the transaction period. So, to effectuate a rescission, the, you know, Bank of New York, as successor to Countrywide, would have to potentially return, it says, any money or property given as earnest money, down payment or otherwise, and then terminate its security interest that was created. But I don't know how you can terminate the security interest where the mortgage has been foreclosed, and the mortgage has merged into the judicial sale deed. I don't know of a way to unwind it anymore. And that leads into my second argument, that the TELA rescission claim itself is moot for the same reason. There was no stay there, obtained or perfected by the appellants during the appropriate time window. And because there was no stay, it's not possible to effectuate the rescission as contemplated by the language of statute. Effectively, what you've got is, it's almost like the law of the case. So, if the foreclosure judgment can no longer be reversed, because that claim has gone final, how can you possibly then effectuate a rescission that contradicts the relief granted in the foreclosure judgment? The foreclosure judgment says, yes, you have a valid, or you had a valid mortgage. The borrowers didn't meet their obligations under the lending agreement. And so, therefore, the property is sold, and it was sold to this third party. To effectuate the rescission, you'd have to say, in direct contradiction to that, that the foreclosure judgment isn't valid, that the mortgage was not valid, that the mortgage should have been rescinded before the judgment was ever entered. And putting everybody back into the 2007 status quo, I'm just not aware of a way to do that. Finally, with respect to- Let me ask one other question. The trial court specifically says in findings that the defendant's claim for money damages under TILA was previously dismissed because, as an assinee plaintiff, that would be Bank of New York, can only be liable for rescission. Whereas here, the alleged disclosure violations are not apparent on the face of the documents. Accordingly, the only relief of rescission is available to the defendants or coaches through their counterclaim. I mean, I don't understand how that can be any clearer. I mean, could you be responsible for paying the TILA? Could not you personally, of course, but the Bank of New York be responsible for paying for those TILA violations if they existed? No, Judge. The statute, I believe, has a carve-out that assinees are not liable. It may not be in the statute, but there's clearly case law that was briefed on the merits in connection with that 2017 order dismissing that claim. Speaking of briefs, we asked for supplemental briefing, which both of you granted, but supplemental briefing on both sides was better than your briefing. How did these things get left out? Well, Judge, I can't speak for Mr. Brown. Speak for yourself. In preparing my brief, my effort was to respond to the arguments raised by Mr. Brown. And Mr. Brown's opening brief did not address the TILA damages claim at all. Where that claim wasn't addressed in the opening brief, and as I believe the court noted, that dismissal wasn't addressed in the notice of appeal. It didn't seem appropriate to neither appeal nor raise. To the extent that the court requested the supplemental briefing, I felt obligated to explicate that issue that wasn't previously addressed in my opening brief because the supplemental request, it was directed at something that, as your honors note, was not previously briefed. So I was attempting to be diligent and thorough in my supplemental brief. All right. I appreciate that. All right. You may proceed. I didn't mean to interrupt. No, Justice. I actually don't have too much more to say. I did want to address that it's also our position that the TILA damages claim that the court does not have jurisdiction to overturn that dismissal order because it was not raised in the notice of from your honors. I'll see the rest of my time. There is, of course, some law that allows that even if an order is not identified, if it is a procedural step to get to the end, it could be still considered. Is this count in TILA a procedural step to the foreclosure? I don't believe that's the case. I did cite a case in my supplemental brief. Let me see if I have the citation here. It was something against Village of Lake Forest. Yeah, Edward Gillen versus City of Lake Forest. I think that case is directly on point that if the case, even if it's in the same overall claim like the case, one case, if you've got separate claims, the dismissal of one claim is not a procedural step towards the judgment on another. Okay, Justice Jorgensen, do you have any other questions? Nope, that was my question. Okay, and Justice Hudson, do you have any other questions? I do not. Thank you. All right, thank you, Mr. Dysinger. Now, Mr. Brown, if you wish to respond, you may do so. I do. I've located a pretty critical case law here, which I'm pretty sure I cited to in my acquisition, LLC versus Standard Bank and Trust Company. That's 2015 IL 117950. That's a Supreme Court case, and it addresses directly the issue of whether rescission is available after a mortgage foreclosure sale has occurred. In that case, a borrower died and the bank sold the property to a third party. However, the Supreme Court, and I'm going to just read this to you, we conclude, as the Tawasen Court did, that when a lender fails to comply with his obligations under paragraph, under TILA, and the borrower timely sues to enforce his rights, those rights are not subject to the loss at a subsequent date by reason of the passage of three years, or it logically follows by reasons of a sale of the property. If a sale of the property subsequent to the exercise of the right to rescind served to extinguish the right, a consumer would lose the right to damages based on the creditor's failure to rescind when it was legally required to do so. For the foregoing reasons, we conclude that when a consumer timely exercises strike to rescind consumer transaction through proper notice to the creditor, a sale of the property does not terminate a consumer's right to rescind. That's paragraphs 40 and 41 of that case. Okay, now would you give me the citation on that again, please? I don't have my brief in front of me. That's okay. 2015 IL 1179.50, and that's Financial Freedom Acquisition LLC versus Standard Bank and Trust Company. Okay, so let's break that down then into what is relevant here. In this case, it's an identical, perfectly analogous case in which a lender or a fatsignee has sold the property subject to a timely submitted letter of rescission, which the trial court acknowledged was timely sent. There's a mail receipt indicating that it's been timely sent, exercising the right to rescind. That took place, that was timely, like I said, and it gave rise to the right to rescission and damages based on the United States Supreme Court decision in Jesenowski. Once they've exercised it, that right that absolute right would be unfairly cut short just if the bank manages to sell the property to a third party, that that deprives the consumer, in this case, of the right to rescission guaranteed by TILA. So since they've timely rescinded through the rescission letter of, I think it was February 28, 2008, that subsequent sale of the property does not deprive them of the right to rescission. And as the Supreme Court noted, and this is as I just read, a consumer would lose the right to damages based on the failure to rescind when it was legally required to do so. All right, well then that brings me back to my original question or my, not original, I've asked several, but one of my earlier questions, even if all the ducks were in line, the trial court specifically said it did not believe your client and Mrs. Coach really didn't recall a great deal of what occurred that day because she was doing laundry and she was in and out of the room. So it was, and he also said that he believed Ms. Maxwell, even though she didn't have a memory, but she had done this for some time and this is what she normally did. So how do we get past that? We get past that because we're talking about the preponderance of the evidence. We're talking about where there was positive evidence adduced in favor of one point or the other. In this case, there was no evidence adduced that they received two notices of right to cancel. If you look at Mary Maxwell's testimony, which I've exhaustively examined in my opening brief and in my reply brief, there is, she never indicated that she left to, or that was her normal practice to leave to. The other, say what you will, credit the trial court as you will with its disbelieving of my client, but it still believed him enough to find that the presumption of mailing or the presumption of receipt of two notices of right to cancel was overcome by his testimony. So there must be some evidence the trial court found in Coach's favor. Well, what he really, what apparently the trial court was concerned about, as I recall, is that he said he'd put papers in, didn't touch it again, but yet there's some things that happened in that file between the time that Ms. Maxwell left and the time he went to the attorney's office, including a signature of some sort. And strangely enough, I think it is quite a coincidence that they stopped paying about the same time that, well, they stopped paying when they did the rescission notice, but there was an almost an immediate, which is very unusual, attempt to foreclose. So, I mean, obviously the judge took those things into account, didn't he? I can't be sure what the judge took into account other than what he wrote in his, or what he stated in his oral explanation of his judgment. I would, it seems my time is up, so if you'll allow me to finish. I'm sorry. In this case, the court was concerned that there were documents that Countrywide or Bank of New York had produced post-closing. Those were not in Mr. Coach's, in his packet. Coach testified that his packet included things up to and including the closing, and that everything he had at that time went into this packet, which he took to his attorney. The trial court found erroneously that he said he didn't put anything from before the closing into his packet, and he also said it was, you know, a lie because there were clearly signed documents from after the closing, which is what you're referring to. He never said he included these in this specific packet, and it isn't important for the purposes of TILA if he didn't include things post-closing, because they're required to be given at closing. Well, it's not important that he didn't, or it happened post-closing. The issue is he said he didn't touch that file after he put what happened with Ms. Maxwell put it in his file cabinet or drawer, wherever it went, and it didn't come out until afterwards, but we have some things that might have gotten in or gotten out that in the interim. Isn't that what the trial court said? I don't believe that's what the trial court said, or I I believe what they said is that there was assigned, there's recognition that he received documents post-closing, and that those were not in the packet that he brought to his attorney, even though the trial court misattributed him as saying that everything he had related to the loan was in the closing packet, or in the packet he brought to his attorney. All right, let me ask my colleagues, Justice Jorgensen, anything else? I do not. Thank you, and Justice Hudson? I do not, thank you. Thank you. All right, Mr. Brown, if you'd like to summarize and close. In conclusion, we have a situation in which the trial court was presented with no evidence that the Bank of New York or Countrywide had complied with TILA and invalidating the coach's TILA claim for rescission against them, because all the evidence said that one or zero were received, and the court evidently credited enough of coach's testimony to say nothing of his wife, who corroborated all of his testimony, along with the elements of Sherry Maxwell's testimony, the closer who corroborated his testimony, that altogether the only evidence that exists in this case is in favor of finding that there was a TILA violation, and there's no other evidence. In conclusion, we ask that this court overturn, overrule the trial court's ruling and remand this case for further proceedings consistent with TILA rescission. Thank you. All right, thank you very much, counsel, for your arguments this morning. As I indicated to Mr. Geisinger, I would have liked some addition, I would have liked a more thorough briefing, both from Mr. Brown and Mr. Geisinger in the initial briefs, give us a better perspective, but we have what we have, and now it's been explained. We will take this matter under advisement. We will make a decision in due course, and at this point we will stand in, I guess, adjournment for the day, and you are excused from the proceedings. Thank you. Thank you. Thank you, Judge.